UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 94-10287-MLW |
| ᴸ—FRANCIS P. SALEMME, | ) ) | Violations: |
| ᵌ—JAMES J. BULGER, | ) | 18 USC 1962(c)(d) |
| ᵞ—STEPHEN J. FLEMMI, | ) | 18 USC 1951 |
| ᵟ—GEORGE KAUFMAN, | ) | 18 USC 1952 |
| ᵠ—FRANCIS P. SALEMME, JR., | ) | 18 USC 371 |
| ᴵ—ROBERT P. DELUCA, | ) | 18 USC 1512 |
| ᵗ—JAMES M. MARTORANO, | ) | 18 USC 893 |
| Defendants. | ) | 18 USC 894 |
| | ) | 18 USC 2 |
| | ) | 31 USC 5322 |
| | ) | 31 USC 5324 |

## SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY in and for the District of
Massachusetts, sitting at Boston, charges that:

## COUNT ONE
[18 USC §1962(d)]

1.  At times material to the allegations contained in this
Indictment:

(a)  Continuously between 1965 and the present there
existed in the District of Massachusetts and elsewhere a secret
criminal organization known by various names, including "La Cosa
Nostra," "Stu Cosa," "The Mafia," "This Thing of Ours," and "This
Thing," which operated throughout the United States through
entities known as "Families," and was ruled on a national level
by a "Commission," traditionally located in New York City,
composed of the heads or "Bosses" of the most powerful Families.

(1)  The Patriarca Family of La Cosa Nostra (the

"Family"), which operated in the Districts of Massachusetts, Rhode Island, Connecticut, and elsewhere derived its name from its former Boss, Raymond L. S. Patriarca, who headed the Family until his death on July 11, 1984 and who was then succeeded by his son, Raymond J. Patriarca, a/k/a "Junior," until he was succeeded by the defendant FRANCIS P. SALEMME.

(2)   The Patriarca Family existed and acted in conformity with the rules of La Cosa Nostra.

(3)   The Patriarca Family was structured as follows:  The Family was headed by a "Boss."  Second-in-command was an "Underboss."  Below the Underboss were a number of "Capo Regimes" or "Capos", who acted as lieutenants or captains in the organization in charge of a Regime or "crew."  A number of men, each of whom were known as "Soldiers" or "made" members of the Family, were assigned to each Regime.  A "Consigliere" or counselor acted as the advisor to the Family.  In addition, the Family utilized "associates" who, although not "made" members of the Family, participated in the activities of the Family, performed necessary and helpful roles in the criminal endeavors of the Family, and served as insulation from criminal exposure for Soldiers and the remaining hierarchy of the Family.

(4)   During 1981, Raymond L.S. Patriarca was the Boss of the Family.  The Underboss was Gennaro Angiulo.  V. Nicolo Angiulo was the Consigliere of the Family.  The Capo Regimes included Ilario Zannino, a/k/a "Larry Baione", Donato Angiulo, Samuel Granito, Nicholas Bianco, and Peter Joseph Limone.

(5)  As of October 1989, Raymond J. Patriarca was the Boss of the Family.  The Underboss was Nicholas A. Bianco. Joseph A. Russo was the Consigliere and acted as the Underboss for the Greater Boston area.  The Capo Regimes included Charles Quintina, Vincent M. Ferrara, Robert F. Carrozza, and Biagio DiGiacomo in Boston and Matthew L. Guglielmetti, Jr., in Rhode Island.

(6)  As of 1991, the defendant FRANCIS P. SALEMME was the Boss of the Family.  Charles Quintina was the Consigliere of the Family.  The defendant JAMES M. MARTORANO was a Capo Regime.  The defendant ROBERT P. DELUCA was a Soldier.

(7)  Members and associates were required to obey their superiors in the Family and to commit criminal acts at their direction, including murder.

(8)  Members of the Family shared in the illegal profits of the criminal activity of others and were, in turn, responsible for sharing these illegal profits with their superiors in the Family.

(9)  The Family acted with the purpose of controlling, supervising, financing, and otherwise participating in and deriving income from illegal activities, including illegal gambling, extortion, loansharking, and narcotics distribution businesses and the collection of unlawful debts.

(10)  The Family acted to perpetuate its existence by selecting new leaders and by "making" or "baptizing" new members who had undergone an apprenticeship in crime, had

received instructions as to the law and protocol of the Family, and had fulfilled the other requirements of membership.

(b)   Continuously between 1970 and the present there existed in the District of Massachusetts a criminal organization known by various names, including "The Winter Hill Gang" and "South Boston." During the 1970's, this organization was based in Somerville, Massachusetts. Since that time, it has operated from various locations including Boston's West End, South Boston, and Brookline, Massachusetts.

(1)   During the 1970's, Howard T. Winter was the Boss of The Winter Hill Gang. The defendants JAMES J. BULGER and STEPHEN P. FLEMMI and John Martorano acted in supervisory positions under Winter.

(2)   In approximately 1979, Winter was convicted of racketeering and incarcerated. John Martorano, who was indicted along with Winter, became and remains a fugitive. As a result of these events, the defendants JAMES J. BULGER and STEPHEN J. FLEMMI succeeded Winter as the leaders of the Winter Hill Gang.

(3)   The Winter Hill Gang acted with the purpose of controlling, supervising, financing, and otherwise participating in and deriving income from illegal activities, including illegal gambling, extortion, loansharking, and narcotics distribution businesses and the collection of unlawful debts.

4

(c)   The defendant FRANCIS P. SALEMME is the boss of the Patriarca Family.  In 1973, SALEMME attempted to murder an attorney, John Fitzgerald, who represented a government witness, Joseph Barboza.  SALEMME engaged in this criminal activity pursuant to his association with and to further the goals of the Patriarca Family.  SALEMME was a fugitive between approximately 1967 and 1973, when he was apprehended in New York City.  SALEMME was incarcerated until approximately 1988.  Upon SALEMME's release from prison, SALEMME was inducted into the Patriarca LCN Family and became a Soldier or "made" member.  SALEMME was the target of an assassination plot when he was shot on June 16, 1989 in Saugus, Massachusetts.  About this time, William Grasso, then Underboss of the Patriarca Family, was assassinated in Connecticut.  Subsequent to June 1989, SALEMME became a Capo Regime in the Patriarca LCN Family.  In approximately 1990, SALEMME was placed in control of Boston by then Patriarca Family Boss Raymond J. Patriarca.  In approximately 1991, SALEMME travelled to New York City where he met with other members of La Cosa Nostra and was elevated to Boss of the Patriarca Family.

(d)   The defendants JAMES J. BULGER and STEPHEN J. FLEMMI have controlled the Winter Hill Gang since approximately 1979.  BULGER, who organized the gaming rackets during the 1970's, has often, but not always, acted through intermediaries such as the defendants STEPHEN J. FLEMMI and GEORGE KAUFMAN since approximately 1979 in order to insulate himself from criminal

5

liability.

(e)  The defendant STEPHEN J. FLEMMI has been a close associate of the defendant FRANCIS P. SALEMME since at least 1968 when FLEMMI participated with the defendant SALEMME in the attempted murder of attorney John Fitzgerald.  FLEMMI too was a fugitive between 1968 and 1974.  In approximately 1974, FLEMMI was offered the opportunity to become a "made" member of the Patriarca LCN Family by Raymond L.S. Patriarca.  FLEMMI refused the offer and chose to associate himself with the defendant BULGER.  However, FLEMMI pledged his own and BULGER'S loyalty to Patriarca.

(f)  The defendant GEORGE KAUFMAN has been a member of the Winter Hill Gang since the late 1970's.  KAUFMAN collected extortion payments, also known as "rent" payments, from bookmakers and loansharks for BULGER and FLEMMI.  KAUFMAN also acted as a liaison between these loansharks and bookmakers, on the one hand, and BULGER and FLEMMI, on the other hand, regarding the terms of these "rent" payments.  KAUFMAN's other duties as an intermediary for BULGER and FLEMMI included obtaining authorization from BULGER and FLEMMI to make loans to bookmakers and loansharks in need of financing as well as making arrangements for BULGER and FLEMMI  to resolve disputes which arose from these illegal activities.

6

(g)  The defendant FRANCIS P. SALEMME, JR. is the son of the defendant FRANCIS P. SALEMME.  SALEMME, JR. was associated with the Patriarca Family while the defendant FRANCIS P. SALEMME was incarcerated.  When FRANCIS P. SALEMME became a Capo Regime, SALEMME, JR. was assigned to his father's "crew."

(h)  The defendant ROBERT P. DELUCA is a Soldier in the Patriarca Family.  DELUCA was inducted into the Patriarca Family at a ceremony on October 29, 1989 in Medford, Massachusetts. DELUCA has been a frequent companion of the defendant FRANCIS P. SALEMME since at least 1990.

(i)  The defendant JAMES M. MARTORANO is the brother of John Martorano.  The defendant MARTORANO was a member of the Winter Hill Gang during the 1970's.  He was incarcerated between approximately 1976 and 1982.  Upon MARTORANO's release from prison, he continued his association with the defendants FLEMMI and KAUFMAN.  When the defendant FRANCIS P. SALEMME was released from prison in 1988, MARTORANO became closely associated with the defendant SALEMME.  MARTORANO subsequently was inducted into the Patriarca Family and was elevated to the position of Capo Regime in 1991.  In 1991, MARTORANO participated in a scheme to engage in loansharking activity in Atlantic City, New Jersey with members and associates of the Genovese Family of La Cosa Nostra. MARTORANO engaged in this scheme pursuant to his participation in the affairs of the racketeering enterprise as described in

7

paragraph (j) below.

## THE RACKETEERING ENTERPRISE

(j)  At all times material to the allegations contained in this Indictment, in the District of Massachusetts and elsewhere, the defendants

FRANCIS P. SALEMME,
JAMES J. BULGER,
STEPHEN J. FLEMMI,
GEORGE KAUFMAN,
FRANCIS P. SALEMME, JR.,
ROBERT P. DELUCA, and
JAMES M. MARTORANO

together with other persons known and unknown to the grand jury did constitute an enterprise within the meaning of Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact which was engaged in various criminal activities, consisting of acts involving murder and extortion in violation of the laws of the Commonwealth of Massachusetts; acts indictable under Title 18, United States Code, Section 1951 involving extortion; acts indictable under Title 18, United States Code, Sections 893 and 894 involving extortionate credit transactions; acts indictable under Title 18, United States Code, Section 1955 involving illegal gambling businesses; acts indictable under Title 18, United States Code, Section 1952 involving interstate travel in aid of racketeering enterprises; acts indictable under Title 18, United States Code, Sections 1512 involving tampering with witnesses; and acts indictable under Title 31, United States Code, Sections 5322 and

8

5324 involving structuring transactions to evade reporting requirements.  The individual members of the enterprise used their membership in and association with the Patriarca Family and the Winter Hill Gang to facilitate and to carry out their unlawful activities.

## THE RACKETEERING CONSPIRACY

2.   In or about and between approximately 1967 and the present, in the District of Massachusetts and elsewhere, the defendants

FRANCIS P. SALEMME,
JAMES J. BULGER,
STEPHEN J. FLEMMI,
GEORGE KAUFMAN,
FRANCIS P. SALEMME, JR.,
ROBERT P. DELUCA, and
JAMES M. MARTORANO

and others, known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described in paragraph 1(j) of this Count, did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together with each other and with other persons known and unknown to the grand jury, to conduct and to participate, directly and indirectly, in the conduct of the affairs of the enterprise, which was engaged in and the activities of which affected interstate and foreign commerce, through the pattern of racketeering activity as set forth in paragraphs 18 through 48 of this Count and through the collection of unlawful debt, in violation of Title 18, United States Code, Section 1962(d).

9

## MANNER AND MEANS OF THE CONSPIRACY

3.  It was a part of the conspiracy that the defendants and their co-conspirators would use violence and express and implicit threats of violence and of economic harm to exercise control over and obtain money from persons involved in various forms of legal and illegal activity.

4.  It was a part of the conspiracy that the defendants and their co-conspirators coordinated their illicit activities in order to avoid conflict and to achieve their mutual goal of enriching themselves through the imposition of "street taxes" or "rent" on persons involved in various forms of legal and illegal activity.  In this regard, disputes involving the defendants and their co-conspirators were routinely resolved through meetings known as "sit-downs."

5.  It was a part of the conspiracy that in or about and between 1967 and the present, individuals engaged in illegal gambling activities (hereinafter "bookmakers") were forced to associate themselves with, and make extortion payments known as "rent" to, members of the Patriarca Family in order to conduct their illegal gambling activities.  Those bookmakers who were not associated with members of the Patriarca Family and were "independent" were subject to physical and economic harm if they continued to engage in illegal gambling activities.

10

6.  It was also a part of the conspiracy that in or about and between 1970 and 1979, the Winter Hill Gang operated a sports bookmaking business.  During this period, members of the Winter Hill Gang forced certain independent bookmakers to associate themselves with the Winter Hill Gang's bookmaking operation, and thus to pay a percentage of their revenue to the Winter Hill Gang.

7.  After approximately 1979, certain independent bookmakers were required to make "rent" or extortion payments to members of the Winter Hill Gang in order to engage in illegal gambling activities.

8.  It was part of the conspiracy that members of the Patriarca Family and Winter Hill Gang exercised their influence over illegal gambling activities by adjudicating disputes between bookmakers as well as between bookmakers and gamblers.  Members of the Patriarca Family and the Winter Hill Gang used these disputes as opportunities to extort money from bookmakers and gamblers involved in these disputes.

9.  It was further part of the conspiracy that individuals engaged in illegal lending activities (hereinafter "loansharks") were forced to associate themselves with, and make extortion payments known as "rent" to, members of the Patriarca Family or Winter Hill Gang in order to conduct their illegal  activities.

Those loansharks who were not associated with members of the
Patriarca Family or Winter Hill Gang were subject to physical and
economic harm if they continued to engage in illegal lending
activities.

10.  It was a part of the conspiracy that Joseph A. Yerardi,
Jr. of Brookline, Massachusetts was in the business of lending
and collecting money in violation of the laws of the Commonwealth
of Massachusetts and in violation of Sections 892 and 894 of
Title 18 of the United States Code relating to extortionate
credit transactions. Yerardi also operated an illegal gambling
business and engaged in illegal gambling activities in violation
of Title 18, United States Code, Sections 1955, 1952, and 1084,
and in violation of Chapter 271, Sections 16A, 17, and 17A of the
General Laws of the Commonwealth of Massachusetts.  Yerardi made
"rent" or extortion payments to the Winter Hill Gang in order to
conduct his illegal activities.  Yerardi also collected "rent" or
extortion payments from other individuals engaged in illegal
gambling activities on behalf of the Winter Hill Gang.  Further,
Yerardi's loansharking activities were financed, in part, by the
Winter Hill Gang.

11.  It was part of the conspiracy that Peter J. Fiumara of
Newton, Massachusetts owned and operated the Squire Lounge, an
adult entertainment club located in Revere, Massachusetts.
Fiumara was also in the business of lending and collecting money

12

in violation of Sections 892 and 894 of Title 18 of the United States Code relating to extortionate credit transactions. Fiumara made "rent" or extortion payments to the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. in order to conduct his illegal activities.

12. It was part of the conspiracy that between 1979 and 1994 the Winter Hill Gang collected "rent" or extortion payments from numerous bookmakers in the Greater Boston area. Among these bookmakers were the following:

> Burton L. Krantz,
> Edward Lewis,
> James J. Katz,
> Thomas Ryan,
> Howard Levenson,
> Richard Brown,
> Bernard Weisman
> Mitchell Zukoff, and
> Joseph A. Yerardi, Jr.

13. It was part of the conspiracy that when the defendant FRANCIS P. SALEMME became the Boss of the Patriarca Family in approximately 1990, he sought to extend the conspiracy to collect extortion or "rent" payments into the Framingham, Massachusetts and Milford, Massachusetts areas. He was assisted in this activity by the defendant FRANCIS P. SALEMME, JR., Patriarca Family associate Thomas Hillary, as well as Framingham bookmaker John "Jack" Snell and others known to the grand jury. It was also part of the conspiracy that at or about this time the defendant FRANCIS P. SALEMME also sought to extend the conspiracy

13

to collect extortion or "rent" payments into the Lowell,
Massachusetts area.  He was assisted in this activity by the
defendant ROBERT P. DELUCA and Patriarca Family associates
Charles "Chucky" Flynn and Albert "Pancho" Gonsalves.

14.  It was part of the conspiracy that the defendant
FRANCIS P. SALEMME also conspired with others including the
defendant FRANCIS P. SALEMME, JR. and Patriarca Family associates
Thomas Hillary and Steven DiSarro to engage in illegal gambling
activities by placing video poker machines in establishments such
as bars and restaurants where the machines would be used in an
illegal manner.

15.  It was part of the conspiracy that the defendants
FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. sought to gain
control of Boston area "rent" collections traditionally
controlled by several incarcerated Patriarca Family members
including Capo Regime Vincent Ferrara and Soldier Angelo "Sonny"
Mercurio, and collected "rent" from bookmakers Michael "the
Frenchman" Dezotell and James Katz.

16.  It was part of the conspiracy that the defendant
FRANCIS P. SALEMME coordinated the activities of the Patriarca
Family with the activities of the Winter Hill Gang through the
defendants STEPHEN J. FLEMMI and GEORGE KAUFMAN.

(a)  In this regard, the defendant FRANCIS P. SALEMME

14

presided over a meeting or "sit-down" to resolve a dispute between Winter Hill controlled bookmaker Burton "Chico" Krantz and Patriarca Family controlled bookmaker Vincent "Fat Vinny" Roberto.  Present at this April 1990 meeting were the defendants FRANCIS P. SALEMME, STEPHEN J. FLEMMI, GEORGE KAUFMAN, Patriarca Family Consigliere Charles Quintina, Krantz and Roberto.

(b)  Similarly, the defendants FRANCIS P. SALEMME, STEPHEN J. FLEMMI, GEORGE KAUFMAN, ROBERT P. DELUCA, and JAMES M. MARTORANO met in June 1991 to resolve a dispute between Patriarca Family controlled bookmaker Michael Dezotell and a Winter Hill Gang associated gambler named Kenneth Schiavo.

17.  It was part of the conspiracy, due to the national nature of La Cosa Nostra and the regional jurisdiction of the Patriarca Family, that the defendants FRANCIS P. SALEMME, FRANCIS P. SALEMME, JR., ROBERT P. DELUCA, and JAMES M. MARTORANO travelled in interstate commerce and aided and abetted others to so travel in furtherance of the criminal activities of the Patriarca Family.  In particular,

(a)  the defendant ROBERT P. DELUCA, who resides in Lincoln, Rhode Island, travelled to Medford, Massachusetts in October 1989 to attend a La Cosa Nostra induction ceremony where DELUCA and three others were inducted into the Patriarca Family;

(b)  the defendants FRANCIS P. SALEMME and ROBERT P. DELUCA aided and abetted and caused the travel of a Gambino Family Capo Regime named Natale Richichi from Las Vegas, Nevada

15

to Boston, Massachusetts in December 1991 to discuss, among other things, the structure and operation of the Patriarca Family in New England;

(c)  the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. frequently travelled to Los Angeles, California and Las Vegas, Nevada during 1990 and 1991 in furtherance of a conspiracy to bribe union officials in Las Vegas and Boston; and

(d)  the defendant JAMES M. MARTORANO travelled to New York and New Jersey in October 1991 in furtherance of a scheme to finance illegal loansharking in Atlantic City, New Jersey.

## PATTERN OF RACKETEERING

It was a part of the conspiracy that the defendants agreed to commit the following acts of racketeering in the conduct of the affairs of the Enterprise:

18.  **Racketeering Act #1**: From in or before January 1979, and continuing until in or about June 1994, in the District of Massachusetts and elsewhere, the defendants, FRANCIS P. SALEMME, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, FRANCIS P. SALEMME, JR., ROBERT P. DELUCA, and JAMES M. MARTORANO, did conspire with each other and with other persons known and unknown to the Grand Jury, to obtain property, to wit, United States currency, from persons known and unknown to the Grand Jury, who were engaged in unlawful activities, including illegal gambling and illegal money lending, with their consent, which consent was

16

induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss and to thereby obstruct, delay, and affect commerce and movement of any article in commerce in violation of Title 18, United States Code, Section 1951.

19.  <u>Racketeering Act #2</u>:  From in or about and between 1970 and 1979, in the District of Massachusetts and elsewhere, the defendant, JAMES J. BULGER, aided and abetted by others known and unknown to the grand jury, including the defendants STEPHEN J. FLEMMI, JAMES M. MARTORANO, John Martorano, and Howard T. Winter, did unlawfully, wilfully, and knowingly conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, to wit, a sports betting business, in violation of the laws of the Commonwealth of Massachusetts in which said business was conducted (Massachusetts General Laws, Chapter 271, Sections 7, 9, 16A, 20, and 22), which illegal gambling business involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part thereof and remained in substantially continuous operation in excess of thirty (30) days and had a gross revenue of two thousand dollars ($2,000) in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

20.  <u>Racketeering Act #3</u>:  In approximately 1972 or 1973, in the District of Massachusetts, the defendant JAMES J. BULGER, aided and abetted by Howard T. Winter and John Martorano, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Richard Wilgoren who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

21.  <u>Racketeering Act #4</u>:  In approximately 1974, in the District of Massachusetts, the defendant JAMES J. BULGER, aided and abetted by Howard T. Winter and John Martorano, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Burton L. Krantz who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

22.  <u>Racketeering Act #5</u>:  Continuously between January 1979 and June 1992, in the District of Massachusetts, the defendants JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Burton L. Krantz who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

23.  <u>Racketeering Act #6</u>:  Continuously between January 1979 and June 1992, in the District of Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Edward Lewis who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

24. <u>Racketeering Act #7</u>:  From in or before May 1991
through in or after December 1991, in the District of
Massachusetts, the defendants JAMES J. BULGER, STEPHEN J. FLEMMI,
GEORGE KAUFMAN, and other persons known and unknown to the Grand
Jury, did knowingly and unlawfully obtain property, to wit,
United States currency from Thomas Ryan who was engaged in
illegal gambling activity, with his consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear including indirect threats of physical harm,
property damage, and economic loss, and thereby did obstruct,
delay, and affect commerce and the movement of any article in
commerce in violation of Title 18, United States Code, Sections
1951 and 2.

25. <u>Racketeering Act #8</u>:  From in or before 1989 through in
or after June 1992, in the District of Massachusetts, the
defendants JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN,
and other persons known and unknown to the Grand Jury, did
knowingly and unlawfully obtain property, to wit, United States
currency from Richard Brown who was engaged in illegal gambling
activity, with his consent, which consent was induced by the
wrongful use of actual and threatened force, violence, and fear
including indirect threats of physical harm, property damage, and
economic loss, and thereby did obstruct, delay, and affect
commerce and the movement of any article in commerce in violation
of Title 18, United States Code, Sections 1951 and 2.

26.  <u>Racketeering Act #9</u>:  From in or before 1987 through approximately May 1990, in the District of Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Mitchell Zukoff who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

27.  <u>Racketeering Act #10</u>:  From in or before the late 1980's through June 1993, in the District of Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Howard Levenson who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

21

28. <u>Racketeering Act #11</u>:  From in or before 1986 through in or after October 1993, in the District of Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN, FRANCIS P. SALEMME, FRANCIS P. SALEMME, JR. and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Joseph A. Yerardi, Jr. who was engaged in illegal gambling and loansharking activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

29. <u>Racketeering Act #12</u>:  Continuously between approximately September 1991 and April 1994, in the District of Massachusetts, the defendants, FRANCIS P. SALEMME, FRANCIS P. SALEMME, JR. and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Peter Fiumara who was engaged in loansharking activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections

22

1951 and 2.

30.   The defendants named below committed the following acts
relating to extortion, commission of any one or more of said acts
constituting the commission of Racketeering Act 13.

(a)   <u>Racketeering Act #13A</u>:   Continuously between
approximately June 1991 and December 1993, in the District of
Massachusetts, the defendants FRANCIS P. SALEMME, FRANCIS P.
SALEMME, JR. and other persons known and unknown to the Grand
Jury, did knowingly and unlawfully obtain property, to wit,
United States currency from Michael Dezotell who was engaged in
illegal gambling activity, with his consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear including indirect threats of physical harm,
property damage, and economic loss, and thereby did obstruct,
delay, and affect commerce and the movement of any article in
commerce in violation of Title 18, United States Code, Sections
1951 and 2.

(b)   <u>Racketeering Act #13B</u>:   Continuously between
approximately November 1992 and October 1994, in the District of
Massachusetts, the defendants, FRANCIS P. SALEMME, FRANCIS P.
SALEMME, JR. and other persons known and unknown to the Grand
Jury, did knowingly and unlawfully obtain property, to wit, the
use of a 1992 Ford Explorer from Michael Dezotell who was engaged
in illegal gambling activity, with his consent, which consent was
induced by the wrongful use of actual and threatened force,

violence, and fear including indirect threats of physical harm,
property damage, and economic loss, and thereby did obstruct,
delay, and affect commerce and the movement of any article in
commerce in violation of Title 18, United States Code, Sections
1951 and 2.

31.  Racketeering Act #14:  In or about and between
approximately July and October 1990, in the District of
Massachusetts, the defendants, FRANCIS P. SALEMME, STEPHEN J.
FLEMMI, GEORGE KAUFMAN and other persons known and unknown to the
Grand Jury, did knowingly and unlawfully obtain property, to wit,
United States currency from Burton Krantz and Vincent Roberto who
were engaged in illegal gambling activity, with their consent,
which consent was induced by the wrongful use of actual and
threatened force, violence, and fear including indirect threats
of physical harm, property damage, and economic loss, and thereby
did obstruct, delay, and affect commerce and the movement of any
article in commerce in violation of Title 18, United States Code,
Sections 1951 and 2.

32.  Racketeering Act #15:  In or about and between
approximately 1989 and June 1992, in the District of
Massachusetts, the defendants, FRANCIS P. SALEMME, ROBERT P.
DELUCA, GEORGE KAUFMAN and other persons known and unknown to the
Grand Jury, did knowingly and unlawfully obtain property, to wit,
United States currency from Albert Figaratto who was engaged in

24

illegal gambling activity, with his consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear including indirect threats of physical harm,
property damage, and economic loss, and thereby did obstruct,
delay, and affect commerce and the movement of any article in
commerce in violation of Title 18, United States Code, Sections
1951 and 2.

33.  <u>Racketeering Act #16</u>:  In or about and between
approximately 1988 and June 1992, in the District of
Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J.
FLEMMI, GEORGE KAUFMAN, and other persons known and unknown to
the Grand Jury, did knowingly and unlawfully obtain property, to
wit, United States currency from Bernard Weisman who was engaged
in illegal gambling activity, with his consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear including indirect threats of physical harm,
property damage, and economic loss, and thereby did obstruct,
delay, and affect commerce and the movement of any article in
commerce in violation of Title 18, United States Code, Sections
1951 and 2.

34.  <u>Racketeering Act #17</u>:  Continuously between January
1985 and June 1993, in the District of Massachusetts, the
defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, GEORGE KAUFMAN,
and other persons known and unknown to the Grand Jury, did

25

knowingly and unlawfully obtain property, to wit, United States currency from James J. Katz who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce in violation of Title 18, United States Code, Sections 1951 and 2.

35. <u>Racketeering Act #18</u>: In or about 1987, in the District of Massachusetts, the defendant JAMES M. MARTORANO did willfully advance money as a loan to Joseph A. Yerardi, Jr. with reasonable grounds to believe that it was the intention of Joseph A. Yerardi, Jr. to use the money so advanced directly and indirectly for the purpose of making extortionate extensions of credit within the meaning of Title 18, United States Code, Section 891(6), in violation of Title 18, United States Code, Section 893.

36. <u>Racketeering Act #19</u>: From in or before 1986 through in or after October 1993, in the District of Massachusetts, the defendant GEORGE KAUFMAN, aided and abetted by others known and unknown to the grand jury, did willfully advance money as a loan to Joseph A. Yerardi, Jr. with reasonable grounds to believe that it was the intention of Joseph A. Yerardi, Jr. to use the money so advanced directly and indirectly for the purpose of making

26

extortionate extensions of credit within the meaning of Title 18, United States Code, Section 891(6), in violation of Title 18, United States Code, Section 893.

37.   The defendants named below committed the following acts involving murder, commission of any one or more of said acts constituting the commission of Racketeering Act 20.

(a)   Racketeering Act #20A:   On or about January 30, 1968, in the District of Massachusetts and elsewhere, the defendants FRANCIS P. SALEMME and STEPHEN J. FLEMMI, did wilfully and unlawfully conspire together and with each other and with others known and unknown to the Grand Jury, including Ilario M.A. Zannino named herein as a coconspirator but not as a defendant, to commit an act involving murder, to wit, to assault and beat one John E. Fitzgerald, Jr. with the intent to murder him and to thereby kill and murder the said John E. Fitzgerald, Jr.

(b)   Racketeering Act #20B:   On or about January 30, 1968, in the District of Massachusetts, the defendants FRANCIS P. SALEMME and STEPHEN J. FLEMMI, did commit an act involving murder, that is, being armed with a dangerous weapon, did assault John E. Fitzgerald, Jr. with the intent to murder him in violation of Massachusetts General Laws Chapter 265, Section 18.

38.   The defendants named below committed the following acts relating to travel in aid of racketeering, commission of any one or more of said acts constituting the commission of Racketeering

27

Act 21.

     (a)  <u>Racketeering Act #21A</u>:  On or about September 17, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, Nevada Revised Statutes, Sections 614.140 and 614.150, and New York Penal Law, Sections 180.15 and 180.25, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

     (b)  <u>Racketeering Act #21B</u>:  On or about September 25, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Providence, Rhode Island, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Rhode Island General Laws, Chapter 7, Sections 11-7-3 and 11-7-4, and did thereafter perform and

attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(c) <u>Racketeering Act #21C</u>: On or about September 27, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Warwick, Rhode Island to Malden, Massachusetts, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Rhode Island General Laws, Chapter 7, Sections 11-7-3 and 11-7-4, and Massachusetts General Laws, Chapter 271, Section 39, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(d) <u>Racketeering Act #21D</u>: On or about December 6, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Nevada Revised Statutes, Sections

29

614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(e) <u>Racketeering Act #21E</u>: On or about January 9, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to New York, New York, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of New York Penal Law, Sections 180.15 and 180.25, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(f) <u>Racketeering Act #21F</u>: On or about January 19, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to New York, New York, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor

organizations in violation of New York Penal Law, Sections 180.15 and 180.25, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(g) <u>Racketeering Act #21G</u>:  On or about February 25, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Los Angeles, California, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(h) <u>Racketeering Act #21H</u>:  On or about April 17, 1990, in the District of Massachusetts and elsewhere, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Los Angeles, California, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity,

31

namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(i) <u>Racketeering Act #21I</u>:  On or about May 1, 1990, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Los Angeles, California to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(j) <u>Racketeering Act #21J</u>:  On or about May 3, 1990, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Las Vegas, Nevada to Los Angeles, California, with intent to promote, manage,

32

establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

(k)  <u>Racketeering Act #21K</u>:  On or about May 8, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Los Angeles, California to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

39.  <u>Racketeering Act #22</u>:  On or about October 29, 1989,

the defendant ROBERT P. DELUCA did unlawfully, wilfully, and knowingly travel in interstate commerce between the State of Rhode Island and the Commonwealth of Massachusetts, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, (1) a business enterprise involving gambling in violation of Massachusetts General Laws, Chapter 271, Sections 5, 7, 8, 9, 16A, 17, 20, and 22, and Title 18, United States Code, Section 1955, and narcotics and controlled substances in violation of Title 21, United States Code, Sections 841 and 846, and (2) extortion in violation of Title 18, United States Code, Sections 892, 894, and 1951, and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Sections 1952 and 2.

40. The defendants named below committed the following acts relating to travel in aid of racketeering, commission of any one or more of said acts constituting the commission of Racketeering Act 23.

(a) <u>Racketeering Act #23A</u>: On or about December 11, 1991, the defendants FRANCIS P. SALEMME and ROBERT P. DELUCA did unlawfully, wilfully, and knowingly cause and aid and abet Natale Richichi to travel in interstate commerce between the State of Nevada and the Commonwealth of Massachusetts, with intent to

34

promote, manage, establish, carry on, and facilitate the
promotion, management, establishment, and carrying on of unlawful
activity, to wit, (1) a business enterprise involving gambling in
violation of Massachusetts General Laws, Chapter 271, Sections 5,
7, 8, 9, 16A, 17, 20, and 22, and Title 18, United States Code,
Section 1955, and narcotics and controlled substances in
violation of Title 21, United States Code, Sections 841 and 846,
and (2) extortion in violation of Title 18, United States Code,
Sections 892, 894, and 1951, and thereafter did perform and
attempt to perform acts to promote, manage, establish, carry on,
and facilitate the promotion, management, establishment, and
carrying on of said unlawful activity in violation of Title 18,
United States Code, Section 1952 and 2.

      (b)   <u>Racketeering Act #23B</u>:  On or about December 11,
1991, the defendant ROBERT P. DELUCA did unlawfully, wilfully,
and knowingly travel in interstate commerce between the State of
Rhode Island and the Commonwealth of Massachusetts, with intent
to promote, manage, establish, carry on, and facilitate the
promotion, management, establishment, and carrying on of unlawful
activity, to wit, (1) a business enterprise involving gambling in
violation of Massachusetts General Laws, Chapter 271, Sections 5,
7, 8, 9, 16A, 17, 20, and 22, and Title 18, United States Code,
Section 1955, and narcotics and controlled substances in
violation of Title 21, United States Code, Sections 841 and 846,
and (2) extortion in violation of Title 18, United States Code,
Sections 892, 894, and 1951, and thereafter did perform and

attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in violation of Title 18, United States Code, Section 1952.

41. <u>Racketeering Act #24</u>:  In or about June 1993, in the District of Massachusetts, the defendant STEPHEN J. FLEMMI did corruptly persuade another person and attempt to do so and engage in misleading conduct toward another person known to the grand jury with intent to influence the testimony of that person in an official proceeding in that the defendant did suborn perjury and provide false and misleading information to potential grand jury witnesses in violation of Title 18, United States Code, Section 1512.

42. <u>Racketeering Act #25</u>:  On or about October 10, 1991, the defendant JAMES M. MARTORANO did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to New York, New York, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, financing extortionate extensions of credit in violation of Title 18, United States Code, Section 893, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity in

36

violation of Title 18, United States Code, Section 1952.

43. <u>Racketeering Act #26</u>: In or about 1982, in the District of Massachusetts, the defendant JAMES M. MARTORANO, aided and abetted by others known and unknown to the grand jury, made an extortionate extension of credit as defined by Title 18, United States Code, Section 891(6) to James J. Katz in the amount of approximately $15,000, with respect to which extension of credit it was the understanding of the defendant creditor and the debtor at the time it was made that delay in making repayment could result in the use of violence and other criminal means to cause harm to the person, reputation and property of James J. Katz and others, in violation of Title 18, United States Code, Sections 892(a) and 2.

44. <u>Racketeering Act #27</u>: On or about and between November 1992 and February 1993, in the District of Massachusetts and elsewhere, the defendant ROBERT P. DELUCA and others, known and unknown to the grand jury, did commit an act involving gambling, that is, did knowingly conduct, finance, manage, supervise, and own all or part of an organized criminal gambling business, as defined in Section 11-51-1 of the Rhode Island General Laws, 1956, as amended (Reenactment of 1981), in violation of Sections 11-51-2 and 11-51-1 of the Rhode Island Genral Laws, 1956, as amended (Reenactment of 1981).

45. <u>Racketeering Act #28</u>:  On or about and between December 1, 1990 and April 30, 1991, in the District of Massachusetts, the defendant ROBERT P. DELUCA and others, known and unknown to the grand jury, did commit an act involving gambling, that is, did knowingly organize, supervise, manage and finance at least four persons so that such persons may provide facilities and services and assist in the provision of facilities and services for the conduct of illegal lotteries, and for the illegal registration of bets and the illegal buying and selling of pools upon the result of a trial and contest of skill, speed and endurance of man and beast, and upon the result of a game or competition, in violation of Chapter 271, Massachusetts General Laws, Section 16A.

46. <u>Racketeering Act #29</u>:  In or about and between August 1989 and May 1991, in the District of Massachusetts, the defendants, JAMES J. BULGER, STEPHEN J. FLEMMI, and other persons known and unknown to the Grand Jury, did commit acts and threats involving extortion, that is, did, by a verbal communication, maliciously threaten an injury to the person of Timothy Connolly with intent thereby to extort a pecuniary advantage and with the intent to compel Timothy Connolly to do an act against his will in violation of Massachusetts General Laws, Chapter 265, Section 25.

47. <u>Racketeering Act #30</u>:  In or about and between approximately January 1990 and August 1991, in the District of

Massachusetts, the defendant FRANCIS P. SALEMME did knowingly aid and abet Joseph A. Yerardi, Jr., Peter J. Fiumara, and others known and unknown to the Grand Jury, in the use of extortionate means to collect and attempt to collect extensions of credit made to Steven Ferullo in the approximate aggregate amount of $21,000 in violation of Title 18, United States Code, Sections 894(a) and 2.

48. <u>Racketeering Act #31</u>: On or about and between December 1989 and April 1990, in the District of Massachusetts, while violating another law or laws of the United States, to wit: Title 18, United States Code, Section 1962 (relating to racketeering and conspiracy to engage in racketeering), Section 1951 (relating to interference with commerce by extortion and conspiracy to commit extortion), and Section 893 (relating to financing extortionate credit transactions), the defendant GEORGE KAUFMAN did knowingly and willfully, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder,

(a) cause and attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);

(b) cause and attempt to cause a domestic financial institution to file a report required under section 5313(a) that contained a material omission and misstatement of fact; and

(c) structure and assist in structuring, and attempt

39

to structure and assist in structuring, and cause the structuring of a reportable currency transaction with a domestic financial institution, by instructing attorney Sheldon Ganz to purchase cashier's checks from Shawmut Bank, N.A., all in the amount of $5,000.00 except for one in the amount of $4,860.00, which checks were sequentially numbered #59823 through 59853, on the same day with currency so that no one check would equal more than $10,000.00 in violation of Title 31, United States Code, Sections 5324 and 5322, and Title 18, United States Code, Section 2.

## COLLECTION OF UNLAWFUL DEBT

49. The collection of unlawful debt as defined by Title 18, United States Code, Section 1961(6), that is, a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States or the law of the Commonwealth of Massachusetts, or which was unenforceable in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States or the law of the Commonwealth of Massachusetts, or the business of lending money or a thing of value at a rate usurious under state or federal law, where the usurious rate was at least twice the enforceable rate, through which the defendants agreed to conduct and participate in the affairs of the enterprise, consisted of collecting and attempting to collect and aiding and abetting in the collection and attempted collection of usurious loans as

follows:

(a) In or about and between January 1990 and August 1991, the defendant FRANCIS P. SALEMME, Joseph A. Yerardi, Jr., and others known and unknown to the grand jury, participated in the collection and attempted collection of unlawful usurious debts aggregating approximately $21,000 from Steven Ferullo.

All in violation of Title 18, United States Code, Section 1962(d).

<u>COUNT TWO</u>
[18 USC §1962(c)]

1.   Paragraphs One and Three through Seventeen of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.   In or about and between 1967 and the present, in the District of Massachusetts and elsewhere, the defendants herein,

FRANCIS P. SALEMME,
JAMES J. BULGER,
STEPHEN J. FLEMMI,
GEORGE KAUFMAN,
FRANCIS P. SALEMME, JR. and
ROBERT P. DELUCA,
JAMES M. MARTORANO

and others, known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described in paragraph 1(j) of Count One, did unlawfully, willfully, and knowingly conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, which was engaged in and the activities of which affected interstate commerce, through the pattern of racketeering activity and collection of unlawful debt which are particularly described in Paragraphs Eighteen through Forty-nine of Count One, the contents of which are incorporated as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1962(c) and Section 2.

42

## COUNT THREE
## (18 USC §1951)

From in or before January 1979, and continuing until in or about June 1994, in the District of Massachusetts and elsewhere, the defendants,

FRANCIS P. SALEMME,
JAMES J. BULGER,
STEPHEN J. FLEMMI,
GEORGE KAUFMAN,
FRANCIS P. SALEMME, JR.
ROBERT P. DELUCA, and
JAMES M. MARTORANO,

did conspire with each other and with other persons known and unknown to the Grand Jury, to obtain property, to wit, United States currency, from persons known and unknown to the Grand Jury, who were engaged in unlawful activities, including illegal gambling and illegal money lending, with their consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss and to thereby obstruct, delay, and affect commerce and movement of any article in commerce.

In violation of Title 18, United States Code, Section 1951.

43

## COUNT FOUR
### (18 U.S.C. §§1951 and 2)

Continuously between January 1979 and June 1992, in the District of Massachusetts, the defendants,

**JAMES J. BULGER,**
**STEPHEN J. FLEMMI, and**
**GEORGE KAUFMAN,**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Burton L. Krantz who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.


All in violation of Title 18, United States Code, Sections 1951 and 2.

44

## COUNT FIVE
### (18 U.S.C. §§1951 and 2)

Continuously between January 1985 and June 1993, in the District of Massachusetts, the defendants,

**JAMES J. BULGER,**
**STEPHEN J. FLEMMI, and**
**GEORGE KAUFMAN,**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from James J. Katz who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

45

## COUNT SIX
(18 U.S.C. §§1951 and 2)

Continuously between January 1979 and June 1992, in the District of Massachusetts, the defendants,

JAMES J. BULGER,
STEPHEN J. FLEMMI, and
GEORGE KAUFMAN,

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Edward Lewis who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

46

<u>COUNT SEVEN</u>
(18 U.S.C. §§1951 and 2)

Continuously between May and December 1991, in the District of Massachusetts, the defendants,

JAMES J. BULGER,
STEPHEN J. FLEMMI, and
GEORGE KAUFMAN,

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Thomas Ryan who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

47

<u>COUNT EIGHT</u>
(18 U.S.C. §§1951 and 2)

From in or before 1989 through June 1992, in the District of Massachusetts, the defendants,

JAMES J. BULGER,
STEPHEN J. FLEMMI, and
GEORGE KAUFMAN,

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Richard Brown who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

48

## COUNT NINE
### (18 U.S.C. §§1951 and 2)

From in or before 1987 through approximately May 1990, in the District of Massachusetts, the defendants,

**JAMES J. BULGER,**
**STEPHEN J. FLEMMI, and**
**GEORGE KAUFMAN,**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Mitchell Zuckoff who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

49

## COUNT TEN
### (18 U.S.C. §§1951 and 2)

From in or before the late 1980's through June 1993, in the District of Massachusetts, the defendants,

JAMES J. BULGER,
STEPHEN J. FLEMMI, and
GEORGE KAUFMAN,

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Howard Levenson who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

50

<u>COUNT ELEVEN</u>
(18 U.S.C. §§1951 and 2)

From in or before 1986 through in or after October 1993, in the District of Massachusetts, the defendants,

JAMES J. BULGER,
STEPHEN J. FLEMMI,
GEORGE KAUFMAN,
FRANCIS P. SALEMME, and
FRANCIS P. SALEMME, JR.

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Joseph A. Yerardi, Jr. who was engaged in illegal gambling and loansharking activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT TWELVE
### (18 U.S.C. §§1951 and 2)

Continuously between approximately September 1991 and April 1994, in the District of Massachusetts, the defendants,

**FRANCIS P. SALEMME, and**
**FRANCIS P. SALEMME, JR.**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Peter Fiumara who was engaged in loansharking activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

52

## COUNT THIRTEEN
(18 U.S.C. §§1951 and 2)

Continuously between approximately June 1991 and December 1993, in the District of Massachusetts, the defendants,

**FRANCIS P. SALEMME, and**
**FRANCIS P. SALEMME, JR.**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Michael Dezotell who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT FOURTEEN
(18 U.S.C. §§1951 and 2)

Continuously between approximately November 1992 and October 1994, in the District of Massachusetts, the defendants, FRANCIS P. SALEMME, FRANCIS P. SALEMME, JR. and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, the use of a 1992 Ford Explorer from Michael Dezotell who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

In violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT FIFTEEN
### (18 U.S.C. §§1951 and 2)

In or about and between approximately July and October 1990, in the District of Massachusetts, the defendants,

**FRANCIS P. SALEMME,**
**STEPHEN J. FLEMMI, and**
**GEORGE KAUFMAN**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Burton Krantz and Vincent Roberto who were engaged in illegal gambling activity, with their consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

55

## COUNT SIXTEEN
(18 U.S.C. §§1951 and 2)

In or about and between approximately 1989 and June 1992, in the District of Massachusetts, the defendants,

FRANCIS P. SALEMME,
ROBERT P. DELUCA, and
GEORGE KAUFMAN

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Albert Figaratto who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

56

## COUNT SEVENTEEN
(18 USC §1951)

In or about and between approximately 1988 and June 1992, in the District of Massachusetts, the defendants,

**JAMES J. BULGER,**
**STEPHEN J. FLEMMI,**
**GEORGE KAUFMAN,**

and other persons known and unknown to the Grand Jury, did knowingly and unlawfully obtain property, to wit, United States currency from Bernard Weisman who was engaged in illegal gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

In violation of Title 18, United States Code, Sections 1951 and 2.

57

## COUNT EIGHTEEN
(18 USC §371)

1.   At times material to the allegations contained in this
Count:

(a)   The International Brotherhood of Teamsters
(hereinafter "IBT"), through its affiliated locals, did represent
and would admit to membership persons who were employed by
various companies involved in the film industry throughout the
United States. As such, IBT and each related "local" was a labor
organization engaged in an industry affecting commerce, within
the meaning of Sections 141, 152, and 186 of Title 29 of the
United States Code.

(b)   IBT Local 25 was located in Charlestown,
Massachusetts and was the largest IBT local in New England.
William McCarthy was President of IBT Local 25 as well as
International President and Vice-President.   James Moar was Vice-
President of IBT Local 25.

(c)   William Winn was a member of IBT Local 25 and was
a close associate of James Moar and William McCarthy.   William
Winn was also a "transportation captain" who supervised other IBT
members employed by film companies in the New England region.

(d)   IBT Local 995 was located in Las Vegas, Nevada.
Dick Thomas was Secretary-Treasurer of IBT Local 995.

(e)   The International Alliance of Theatrical and Stage
Employees (hereinafter "IATSE"), through its affiliated locals,
did represent and would admit to membership persons who were

employed by various companies involved in the film industry throughout the United States. As such, IATSE and each related "local" was a labor organization engaged in an industry affecting commerce, within the meaning of Sections 141, 152, and 186 of Title 29 of the United States Code.

(f) IATSE Local 720 was located in Las Vegas, Nevada. Ron Mich'l was business representative of IATSE Local 720. Michael Procia was International Vice-President of IATSE.

(g) Dennis Lepore was a "soldier" or "made" member of the Patriarca Family assigned to the defendant FRANCIS P. SALEMME's regime or "crew."

(h) Thomas Hillary was an associate of the Patriarca Family assigned to the defendant FRANCIS P. SALEMME's regime or "crew." Hillary had close ties to Raymond J. Patriarca.

(i) David Rudder Productions was a film company located in Santa Monica, California. In truth and fact, this company was part of an undercover operation conducted by the Federal Bureau of Investigation. The principal of David Rudder Productions was David Rudder, an undercover agent employed by the Federal Bureau of Investigation.


2. Continuously between approximately March 1989 and June 1990, in the District of Massachusetts and elsewhere, the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury including Dennis Lepore, Thomas

59

Hillary, and William Winn to unlawfully pay and deliver money in excess of $1,000 to union officials and union employees on behalf of David Rudder Productions (1) under circumstances in which said individuals were officers and employees of labor organizations which represented, sought to represent, and would admit to membership the employees of David Rudder Productions and (2) with intent to influence said union officials and union employees in respect to their actions, decisions, and duties as representatives of employees and as officers and employees of a labor organization in violation of Title 29, United States Code, Sections 186 (a)(2), (a)(4), and (b)(1).

## METHODS AND MEANS OF THE CONSPIRACY

3.    It was a part of the conspiracy that the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. and their coconspirators used their influence with James Moar and William Winn to obtain a "sweetheart agreement" for David Rudder Productions which allowed David Rudder Productions to make a film without the employment of IBT members in Boston, Massachusetts and Providence, Rhode Island.

4.    It was further a part of the conspiracy that money in excess of $1,000 was paid by the defendant FRANCIS P. SALEMME, JR. to James Moar in order to gain this "sweetheart agreement" at a time when James Moar was Vice-President of IBT Local 25.

5.   It was further a part of the conspiracy that money was paid by David Rudder to the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. and their coconspirators in return for their services to David Rudder Productions.

6.   It was further a part of the conspiracy that James Moar spoke with John Amaral, President and business agent of IBT Local 251 in East Providence, Rhode Island, and instructed Amaral to permit David Rudder Productions to film in Providence without the employment of IBT members.

7.   It was further a part of the conspiracy that William Winn consented to James Moar's agreement which permitted David Rudder Productions to film a movie without the employment of IBT members in Boston, Massachusetts and Providence, Rhode Island knowing that the defendant FRANCIS P. SALEMME, JR. intended to pay money in excess of $1,000 to James Moar.

8.   It was further a part of the conspiracy that William Winn agreed to assist the defendant and the other coconspirators to obtain a similar "sweetheart agreement" for David Rudder Productions with IBT Local 995 in Las Vegas, Nevada knowing that the defendant FRANCIS P. SALEMME, JR. intended to pay money to an IBT union official in order to accomplish this goal.

9.   It was further a part of the conspiracy that the

William Winn and the defendant FRANCIS P. SALEMME, JR.
represented David Rudder Productions in a meeting with IBT Local
995 Secretary-Treasurer Dick Thomas in Las Vegas, Nevada.

10.  It was further a part of the conspiracy that the
defendant FRANCIS P. SALEMME, JR. represented David Rudder
Productions in several meetings with IATSE Local 720 business
representative Ron Mich'l in Las Vegas, Nevada.

11.  It was further a part of the conspiracy that the
defendant FRANCIS P. SALEMME, JR. stated that he represented
David Rudder Productions in a meeting with IATSE International
Vice-President Michael Procia in New York, New York.

12.  It was further a part of the conspiracy that the
defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. met
with Gambino Crime Family Capo Regime Natale Richichi in Las
Vegas, Nevada in order to further the ends of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects
thereof, the defendants committed and caused to be committed, in
the District of Massachusetts and elsewhere, the following overt
acts, among others;

1.  On or about June 20, 1989, Dennis Lepore and Thomas
Hillary met with David Rudder at the Venezia Restaurant in Boston

Massachusetts.

2.   On or about June 23, 1989, Dennis Lepore and Thomas Hillary met with David Rudder at the Marriot Hotel in Cambridge, Massachusetts.

3.   On or about August 8, 1989, Dennis Lepore travelled from Boston, Massachusetts to Santa Monica, California and met with David Rudder at the business office of David Rudder Productions.

4.   On or about August 23, 1989, Dennis Lepore received $5,000 from David Rudder in Santa Monica, California.

5.   On or about September 6, 1989, the defendant FRANCIS P. SALEMME, JR. and Thomas Hillary met with David Rudder at the Charles Hotel in Cambridge, Massachusetts.

6.   On or about September 8, 1989, Thomas Hillary and William Winn met with James Moar and David Rudder at the Charles Hotel in Cambridge, Massachusetts.

7.   On or about September 17, 1989, the defendant FRANCIS P. SALEMME, JR. and Thomas Hillary travelled from Boston, Massachusetts to Las Vegas, Nevada and met with David Rudder.

8.   On or about September 25, 1989, the defendant FRANCIS P. SALEMME, JR. and Thomas Hillary travelled from Boston, Massachusetts to Providence, Rhode Island and met with David Rudder.

9.   On or about September 26, 1989, the defendant FRANCIS P. SALEMME, JR. met with John Amaral and David Rudder in Warwick, Rhode Island.

10.   On or about December 6, 1989, the defendant FRANCIS P. SALEMME, JR., Thomas Hillary, and William Winn travelled from Boston, Massachusetts to Las Vegas, Nevada and met with David Rudder.

11.   On or about December 8, 1989, the defendant FRANCIS P. SALEMME, JR. received $5,000 from David Rudder in Las Vegas, Nevada.

12.   On or about January 9, 1990, the defendant FRANCIS P. SALEMME, JR. travelled from Boston, Massachusetts to New York, New York and met with David Rudder.

13.   On or about February 1, 1990, the defendant FRANCIS P. SALEMME, JR. met with David Rudder in Providence, Rhode Island.

14.   On or about February 1, 1990, the defendant FRANCIS P. SALEMME, JR. received $5,000 from David Rudder in Providence, Rhode Island.

15.   On or about February 26, 1990, the defendant FRANCIS P. SALEMME, JR. received $1,000 from David Rudder in Santa Monica, California.

16.   On or about March 7, 1990, the defendant FRANCIS P. SALEMME, JR. and William Winn met with David Rudder in Las Vegas, Nevada.

17.   On or about May 1, 1990 the defendants FRANCIS P. SALEMME and FRANCIS P. SALEMME, JR. travelled from Los Angeles, California to Las Vegas, Nevada and met with Natale Richichi.

18.   On or about May 10, 1990, the defendant FRANCIS P. SALEMME, JR. met with David Rudder in Las Vegas, Nevada.

19.   On or about May 22, 1990, the defendant FRANCIS P. SALEMME, JR. met with David Rudder in Santa Monica, California.

20.   On or about June 7, 1990, the defendant FRANCIS P. SALEMME, JR. received $5,000 from David Rudder at the Golden Nugget Hotel in Las Vegas, Nevada.

All in violation of Title 18, United States Code, Section 371.

## COUNT NINETEEN
(18 U.S.C. §1952)

On or about April 17, 1990, in the District of Massachusetts and elsewhere, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Los Angeles, California, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

## COUNT TWENTY
(18 U.S.C. §1952)

On or about May 1, 1990, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Los Angeles, California to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

## COUNT TWENTY-ONE
(18 U.S.C. §1952)

On or about May 3, 1990, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Las Vegas, Nevada to Los Angeles, California, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

## COUNT TWENTY-TWO
(18 U.S.C. §1952)

On or about May 8, 1990, the defendant FRANCIS P. SALEMME did unlawfully, willfully, and knowingly travel in interstate commerce from Los Angeles, California to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

69

## COUNT TWENTY-THREE
(18 U.S.C. §1952)

On or about September 17, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, Nevada Revised Statutes, Sections 614.140 and 614.150, and New York Penal Law, Sections 180.15 and 180.25, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section  1952.

## COUNT TWENTY-FOUR
(18 U.S.C. §1952)

On or about September 25, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Providence, Rhode Island, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Massachusetts General Laws, Chapter 271, Section 39, and Rhode Island General Laws, Chapter 7, Sections 11-7-3 and 11-7-4, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

71

## COUNT TWENTY-FIVE
(18 U.S.C. §1952)

On or about September 27, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Warwick, Rhode Island to Malden, Massachusetts, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Rhode Island General Laws, Chapter 7, Sections 11-7-3 and 11-7-4, and Massachusetts General Laws, Chapter 271, Section 39, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

## COUNT TWENTY-SIX
### (18 U.S.C. §1952)

On or about December 6, 1989, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Las Vegas, Nevada, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section  1952.

73

## COUNT TWENTY-SEVEN
(18 U.S.C. §1952)

On or about January 9, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to New York, New York, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of New York Penal Law, Sections 180.15 and 180.25, and Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

74

## COUNT TWENTY-EIGHT
(18 U.S.C. §1952)

On or about January 19, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to New York, New York, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of New York Penal Law, Sections 180.15 and 180.25, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

75

## COUNT TWENTY-NINE
(18 U.S.C. §1952)

On or about February 25, 1990, the defendant FRANCIS P. SALEMME, JR. did unlawfully, willfully, and knowingly travel in interstate commerce from Boston, Massachusetts to Los Angeles, California, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, bribery of officers and employees of labor organizations in violation of Nevada Revised Statutes, Sections 614.140 and 614.150, and did thereafter perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

In violation of Title 18, United States Code, Section  1952.

## COUNT THIRTY
### (18 U.S.C. §371)

1.   On or about October 29, 1989, in the District of Massachusetts and elsewhere, the defendant ROBERT P. DELUCA did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1952.

2.   It was part of said conspiracy that the defendant and his co-conspirators travelled and caused travel to occur in interstate and foreign commerce to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, said unlawful activity involving (1) a business enterprise involving gambling in violation of Title 18, United States Code, Section 1955, and narcotics and controlled substances in violation of Title 21, United States Code, Sections 841 and 846, and (2) extortion in violation of Title 18, United States Code, Sections 892, 894, and 1951, and that said defendants thereafter performed and attempted to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

3.   It was further part of said conspiracy that the defendant was about to become a member of a secret criminal organization identified and known as the Patriarca Family of La

77

Cosa Nostra which was a business enterprise involving gambling, narcotics, and extortion. Said organization had as its head or Boss Raymond J. Patriarca who resided in Rhode Island. Members and associates of the Patriarca Family of La Cosa Nostra resided in the States of Connecticut, Rhode Island, and New Hampshire and in the Commonwealth of Massachusetts.

4. It was further part of said conspiracy that on October 29, 1989, certain of the co-conspirators travelled in interstate commerce for the purpose of attending a meeting to establish the chain-of-command and hierarchy of the Family, to induct four new members into the Family, and to instruct the new members as to the hierarchy of the organization and as to the rules governing their conduct of its illegal gambling, loansharking, and narcotics activities.

5. In furtherance of the conspiracy and to effect the objects thereof, the defendant and his co-conspirators committed the following overt acts in the District of Massachusetts and elsewhere:

(a) On October 29, 1989, Raymond J. Patriarca, Matthew L. Guglielmetti, Jr., Pasquale Galea, and the defendant ROBERT DELUCA travelled from the State of Rhode Island to Medford in the Commonwealth of Massachusetts.

(b) On October 29, 1989, Carmen A. Tortora, Vincent Federico, Richard J. E. Floramo, and the defendant ROBERT P.

DELUCA were inducted as Soldiers of the Patriarca Family at a ceremony presided over by Raymond J. Patriarca and attended by seventeen members of the Patriarca Family from the States of Rhode Island and Connecticut and the Commonwealth of Massachusetts.

(c)  On October 29, 1989, Biagio DiGiacomo formally opened the induction ceremony by stating in Italian, "In Honor of the Family, the Family is open."

(d)  On October 29, 1989, Carmen A. Tortora, Vincent Federico, Richard J. E. Floramo, and the defendant ROBERT P. DELUCA, who were inducted into the Patriarca Family, received instructions concerning the rules of La Cosa Nostra and agreed in the presence of all other members to kill any individual who posed a threat to the organization and its members.

(e)  On October 29, 1989, Biagio DiGiacomo stated to Carmen Tortora, "Carmen, we're going to baptize you again.  You were baptized when you were a baby, your parents did it, but now this time we gonna baptize you."

(f)  On October 29, 1989, Biagio DiGiacomo administered the following oaths (in Italian) to each of the four inductees:

> I ... want to enter into this organization to protect my Family and to protect all my Friends.  ... I swear not to divulge this secret and to obey, with love and Omerta.

After this first oath the trigger finger of each inductee was cut to draw blood for use in the ritual.  A holy card with the image of the Patriarca Family Saint was then burned as DiGiacomo administered the second oath:

79

## COUNT THIRTY-ONE
(18 U.S.C. §§1952 and 2)

On or about October 29, 1989, the defendant ROBERT P. DELUCA did unlawfully, wilfully, and knowingly travel in interstate commerce between the State of Rhode Island and the Commonwealth of Massachusetts, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, (1) a business enterprise involving gambling in violation of Massachusetts General Laws, Chapter 271, Sections 5, 7, 8, 9, 16A, 17, 20, and 22, and Title 18, United States Code, Section 1955, and narcotics and controlled substances in violation of Title 21, United States Code, Sections 841 and 846, and (2) extortion in violation of Title 18, United States Code, Sections 892, 894, and 1951, and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

All in violation of Title 18, United States Code, Sections 1952 and 2.

81

As burns this Saint so will burn my soul.  I enter
alive into this organization and I will have to get out
dead.

(g)  On October 29, 1989, DiGiacomo explained to each

inductee the commitment to the organization and its secrecy

required of him:

We get in alive in this organization and the only way
we gonna get out is dead no matter what.  It's no hope,
no Jesus, no Madonna, nobody can help us if we ever
give up this secret to anybody, any kinds of friends of
mine, let's say.  This Thing that cannot be exposed.

All in violation of Title 18, United States Code, Section

371.

## COUNT THIRTY-TWO
### (18 U.S.C. §§1952 and 2)

On or about December 11, 1991, the defendants FRANCIS P. SALEMME and ROBERT P. DELUCA did unlawfully, wilfully, and knowingly cause and aid and abet Natale Richichi to travel in interstate commerce between the State of Nevada and the Commonwealth of Massachusetts, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, (1) a business enterprise involving gambling in violation of Massachusetts General Laws, Chapter 271, Sections 5, 7, 8, 9, 16A, 17, 20, and 22, and Title 18, United States Code, Section 1955, and narcotics and controlled substances in violation of Title 21, United States Code, Sections 841 and 846, and (2) extortion in violation of Title 18, United States Code, Sections 892, 894, and 1951, and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

All in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT THIRTY-THREE
(18 USC §1952)

On or about December 11, 1991, the defendant ROBERT P.
DELUCA did unlawfully, wilfully, and knowingly travel in
interstate commerce between the State of Rhode Island and the
Commonwealth of Massachusetts, with intent to promote, manage,
establish, carry on, and facilitate the promotion, management,
establishment, and carrying on of unlawful activity, to wit, (1)
a business Enterprise involving gambling in violation of
Massachusetts General Laws, Chapter 271, Sections 5, 7, 8, 9,
16A, 17, 20, and 22, and Title 18, United States Code, Section
1955, and narcotics and controlled substances in violation of
Title 21, United States Code, Sections 841 and 846, and (2)
extortion in violation of Title 18, United States Code, Sections
892, 894, and 1951, and thereafter did perform and attempt to
perform acts to promote, manage, establish, carry on, and
facilitate the promotion, management, establishment, and carrying
on of said unlawful activity.

In violation of Title 18, United States Code, Section 1952.

83

## COUNT THIRTY-FOUR
(18 USC §894)

In or about and between approximately January 1990 and August 1991, in the District of Massachusetts, the defendant FRANCIS P. SALEMME did knowingly aid and abet Joseph A. Yerardi, Jr., Peter J. Fiumara, and others known and unknown to the Grand Jury, in the use of extortionate means to collect and attempt to collect extensions of credit made to Steven Ferullo in the approximate aggregate amount of $21,000.

In violation of Title 18, United States Code, Sections 894(a) and 2.

## COUNT THIRTY-FIVE
### (18 USC §893)

From in or before 1986 through in or after October 1993, in the District of Massachusetts, the defendant GEORGE KAUFMAN, aided and abetted by others known and unknown to the grand jury, did willfully advance money as a loan to Joseph A. Yerardi, Jr. with reasonable grounds to believe that it was the intention of Joseph A. Yerardi, Jr. to use the money so advanced directly and indirectly for the purpose of making extortionate extensions of credit within the meaning of Title 18, United States Code, Section 891(6).

In violation of Title 18, United States Code, Section 893.

## COUNT THIRTY-SIX
(18 USC §1512)

In or about June 1993, in the District of Massachusetts, the defendant STEPHEN J. FLEMMI did corruptly persuade another person and attempt to do so and engage in misleading conduct toward another person with intent to influence the testimony of that person in an official proceeding in that the defendant did suborn perjury and provide false and misleading information to potential grand jury witnesses.

In violation of Title 18, United States Code, Section 1512.

## COUNT THIRTY-SEVEN
(31 USC §§5324, 5322; 18 USC §2)

1.    At all times material to this indictment, a Currency
Transaction Report (IRS Form 4789) was required to be filed with
the Internal Revenue Service for each transaction in currency in
excess of $10,000.00 with any financial institution, including
deposits, withdrawals, exchanges of currency, purchases of
cashier's checks, and payments or transfers by, through, or to
such financial institutions, identifying the person who conducted
the transaction and the person for whom the transaction was
conducted.

2.    At all times material to this indictment, Shawmut Bank,
N.A. and its branches were "financial institutions," as that term
is defined in Title 31, United States Code, Section 5312, and the
regulations promulgated thereunder, and each such financial
institution was required to file, with the Internal Revenue
Service, a Currency Transaction Report (IRS Form 4789) for each
transaction in currency it conducted in excess of $10,000.

3.    On or about and between December 1989 and April 1990,
in the District of Massachusetts, while violating another law or
laws of the United States, to wit: Title 18, United States Code,
Section 1962 (relating to racketeering and conspiracy to engage
in racketeering), Section 1951 (relating to interference with
commerce by extortion and conspiracy to commit extortion), and
Section 893 (relating to financing extortionate credit

87

transactions), the defendant GEORGE KAUFMAN did knowingly and willfully, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder,

      (a)   cause and attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);

      (b)   cause and attempt to cause a domestic financial institution to file a report required under section 5313(a) that contained a material omission and misstatement of fact; and

      (c)   structure and assist in structuring, and attempt to structure and assist in structuring, and cause the structuring of a reportable currency transaction with a domestic financial institution, by instructing attorney Sheldon Ganz to purchase approximately twenty-eight cashier's checks aggregating $140,000 from Shawmut Bank, N.A., all in the amount of $5,000.00 except for one in the amount of $4,860.00, which checks were sequentially numbered #59823 through 59853, on the same day with currency so that no one check would equal more than $10,000.00.

All in violation of Title 31, United States Code, Sections 5324 and 5322, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1.    The allegations of Counts One and Two of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 1963.

2.    Through the pattern of racketeering activity and collection of unlawful debt alleged in Counts One and Two, the defendants,

FRANCIS P. SALEMME,<br>
JAMES J. BULGER,<br>
STEPHEN J. FLEMMI,<br>
GEORGE KAUFMAN,<br>
FRANCIS P. SALEMME, JR.,<br>
ROBERT P. DELUCA, and<br>
JAMES M. MARTORANO,

have:

(i) interests which they acquired and maintained in violation of Title 18, United States Code, Section 1962, all of which interests wherever located, and in whatever names held, are therefore subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 1963(a)(1); and

(ii) property constituting, and derived from proceeds which they obtained, directly and indirectly, from racketeering activity and collection of unlawful debt in violation of Title 18, United States Code, Section 1962, thereby making such property, or an amount of cash equivalent thereto, forfeitable to the United States of America pursuant to Title 18, United States Code, Section 1963(a)(3).

3.   The interests and property of the defendants subject to forfeiture and for which the defendants are jointly and severally liable, include, but are not limited to, $508,425 in United States currency seized by the Massachusetts State Police from the defendant GEORGE KAUFMAN on or about January 24, 1992.

4.   If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963, as a result of any act or omission of the defendants --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred to, sold to, or deposited with a third person;

    c.   has been placed beyond the jurisdiction of this court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of said property listed above as subject to forfeiture.

All pursuant to Title 18, United States Code, Section 1963.

90

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U. S. ATTORNEY

DISTRICT OF MASSACHUSETTS:  _____, 19__

Returned into the District Court by Grand Jurors and filed.

_____
DEPUTY CLERK

# United States District Court

_____ DISTRICT OF <u>MASSACHUSETTS</u> _____

UNITED STATES OF AMERICA

V.

FRANCIS P. SALEMME, et al.

## WARRANT FOR ARREST

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest    FRANCIS P. SALEMME, JR.
<sub>Name</sub>

and bring him or her forthwith to the nearest magistrate to answer a(n)

XX Indictment    ☐ Information    ☐ Complaint    Order of court    ☐ Violation Notice    ☐ Probation Violation Petition

charging him or her with   brief description of offense:

   RICO; Extortion; Aiding & Abetting; Forfeiture; Travel Act; Conspiracy

in violation of Title   18   United States Code. Section(s)   1962(c)(d); 1951; 2; 1952; 1963; 371

Name of Issuing Officer

Signature of Issuing Officer

Title of Issuing Officer

Boston, Massachusetts   1/10/95

Date and Location

Bail fixed at $ _____ by _____
Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

# United States District Court

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA
V.
Francis P. Salemme, et al.

**WARRANT FOR ARREST**

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ JAMES J. BULGER _____

_Name_

and bring him or her forthwith to the nearest magistrate to answer a(n)

X Indictment   ˽ Information   ˽ Complaint   Order of court   ˽ Violation Notice   ˽ Probation Violation Petition

charging him or her with  brief description of offense

RICO; Extortion; Aiding & Abetting; Forfeiture

in violation of Title _____ 18 _____ United States Code Section(s) 1962(c)(d); 1951; 2; 1963

Name of Issuing Officer

Title of Issuing Officer   ) ? O

Signature of Issuing Officer

Boston, Massachusetts   1/10/95
Date and Location

Bail fixed at $ _____   by _____

Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

# United States District Court

_____ DISTRICT OF ___MASSACHUSETTS___ _____

UNITED STATES OF AMERICA

V.

FRANCIS P. SALEMME, et al.

## WARRANT FOR ARREST

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ GEORGE KAUFMAN _____

Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

X Indictment ☐ Information ☐ Complaint ☐ Order of court ☐ Violation Notice ☐ Probation Violation Petition

charging him or her with  brief description of offense

RICO; Extortion; Aiding & Abetting; ECT; Structuring; Forfeiture

in violation of Title  18  United States Code, Section(s)  1962(c)(d); 1951; 2; 893; 1963
                       31                                   5324; 5322

_F. Lo Russo_ _____            _DCO_ _____
Name of Issuing Officer                       Title of Issuing Officer

_[signature]_ _____            Boston, Massachusetts      1/10/95
Signature of Issuing Officer                  Date and Location

Bail fixed at $ _____    by _____

Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

# United States District Court

_____ DISTRICT OF <u>MASSACHUSETTS</u> _____

UNITED STATES OF AMERICA

V.

FRANCIS P. SALEMME, et al.

## WARRANT FOR ARREST

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ <u>FRANCIS P. SALEMME, JR.</u> _____
Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

xx Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with  brief description of offense:

RICO; Extortion; Aiding & Abetting; Forfeiture; Travel Act; Conspiracy

in violation of Title ____18____ United States Code, Section(s) 1962(c)(d); 1951; 2; 1952; 1963; 371

_____          _____
Name of Issuing Officer                   Title of Issuing Officer

_____          Boston, Massachusetts     1/10/95
Signature of Issuing Officer               Date and Location

Bail fixed at $ _____     by _____
Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

# United States District Court

### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
V.
FRANCIS P. SALEMME, et al.

## WARRANT FOR ARREST

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest    JAMES M. MARTORANO

Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

X Indictment    _ Information    _ Complaint    _ Order of court    _ Violation Notice    _ Probation Violation Petition

charging him or her with  brief description of offense:
RICO; Extortion; Forfeiture

in violation of Title ___18___ United States Code Section(s) 1962(c)(d); 1951; 1963

Name of Issuing Officer

Signature of Issuing Officer

Title of Issuing Officer

Boston, MA          2/10/95

Date and Location

Bail fixed at $ _____    by _____

Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

# United States District Court

_____ DISTRICT OF <u>MASSACHUSETTS</u> _____

UNITED STATES OF AMERICA

V.

Francis P. Salemme, et al.

## WARRANT FOR ARREST

CASE NUMBER: 94-10287-MLW

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest     <u>JAMES J. BULGER</u>
Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

X Indictment    __ Information    __ Complaint     __ Order of court    __ Violation Notice    __ Probation Violation Petition

charging him or her with   brief description of offense
   RICO; Extortion; Aiding & Abetting; Forfeiture

in violation of Title _____ 18 _____ United States Code Section(s) 1962(c)(d); 1951; 2; 1963

_____
Name of Issuing Officer

_____
Signature of Issuing Officer

Title of Issuing Officer

Boston, Massachusetts   1/10/95
Date and Location

Bail fixed at $ _____    by _____
Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

# United States District Court

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

V.

FRANCIS P. SALEMME, et al.

## WARRANT FOR ARREST

CASE NUMBER:  94-10287-MLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ FRANCIS P. SALEMME _____

Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

X Indictment ___ Information __ Complaint ___ Order of court __ Violation Notice __ Probation Violation Petition

charging him or her with _brief description of offense_

RICO; Extortion; Aiding & Abetting; Travel Act; ECT; Conspiracy; Forfeiture

in violation of Title ___ 18 ___ United States Code Section(s) 1962(c)(d); 1951; 2; 1952; 894; 371; 1963

_____    _____
Name of Issuing Officer        Title of Issuing Officer

_____    Boston, Massachusetts      1/10/95
Signature of Issuing Officer    Date and Location

Bail fixed at $ _____ by _____

Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |