UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:94-cr-10287-MLW |
| | ) | |
| JAMES J. BULGER | ) | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:99-cr-10371-RGS |
| | ) | |
| JAMES J. BULGER | ) | |

DEFENDANT'S EMERGENCY MOTION TO BAR DISCLOSURES
AND FURTHER LEAKS OF INFORMATION BY
THE FBI AND OTHER LAW ENFORCEMENT AGENCIES

Defendant James J. Bulger moves on an emergency basis for an order barring disclosures and further leaks of non-public information by the FBI and other law enforcement agents and agencies in connection with these cases.  In support of this motion, Mr. Bulger states as follows:

Mr. Bulger is charged in each of the above-referenced indictments with racketeering conspiracies and related charges, which, if he is convicted, would keep him in custody for the remainder of his natural life.  The cases against Mr. Bulger and others charged in connection with, or related to, the allegations in this case, have already been so highly publicized, hyped, written-about (several books) and sensationalized (including in movies), that it will be as close to impossible for Mr. Bulger to get a fair trial on these charges as can be, and certainly more challenging than in any case in modern memory.

In this context, the FBI appears to be leaking non-public information to the press in potential violation of Fed. R. Crim. P. 6(e), 28 C.F.R. § 50.2(b)(2) and at least one prior order of the Court.[1]  The press yesterday widely reported information that Mr. Bulger allegedly provided to FBI agents at or after the time of his arrest on June 22, 2011.  See "Bulger offers new details to authorities," *Boston Sunday Globe* at 1 (June 26, 2011), attached as Exhibit 1.  This alleged information, which reportedly was received by "FBI agents," was not public, and could only have been disclosed to the press by those FBI agents who allegedly received it, by people to whom they disclosed the information, or by prosecutors with access to such information.  When the FBI leaks non-public alleged information to the press, it compounds the already profound problem the Court will face trying to afford Mr. Bulger a fair trial.  See, e.g., United States v. Flemmi, 233 F. Supp. 2d 75, 79 (D. Mass. 2000) ("As the Supreme Court observed in Sheppard [v. Maxwell, 384 U.S. 333, 363 (1966),] improper disclosures by law enforcement officers, as well as by attorneys for the government, threaten the integrity of judicial proceedings. . . . Therefore, a court may regulate the conduct of law enforcement officers involved in a case before it.").

Given the highly sensational nature of this case, the Court can and should enter an order barring law enforcement from disclosing or leaking information to the press or others, or should clarify that the protective order entered in the case before Chief Judge Wolf, see n. 1, supra,

---

[1] In the case before Chief Judge Wolf, the Court entered a protective order in 1997 applying to all "documents and records produced pursuant to" a 1997 order, "or subsequently in discovery," and barred such documents and information from being disclosed other than to certain authorized individuals.  See United States v. Salemme, 978 F. Supp. 386, 386-90 (D. Mass. 1997).  See also United States v. Flemmi, 233 F. Supp. 2d 75, 78-82 (D. Mass. 2000) (holding the government accountable for information apparently leaked to the press in violation of protective order).

continues to apply with respect to discovery in connection with the charges against Mr. Bulger. Local Rule 83.2B states as follows: "In a widely publicized or sensational criminal . . . case, the court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused." This case has, and will continue to be, highly publicized and even sensationalized. The media's interest in this case cannot be overstated. Here, every new "fact" and morsel is followed. Developments are reported with an indiscriminating promptness borne of the internet's constantly shrinking news cycle, and the voyeuristic interests of our celebrity culture and fascination with the Bulger story.

Mr. Bulger is presumed innocent, and entitled to be tried by an impartial jury. The jury pool has surely been tainted by the flood of publicity about this case over the last 25 years. If it is now possible -- and Mr. Bulger seriously questions *whether* it will be possible -- for Mr. Bulger to receive a fair trial, law enforcement leaks of non-public information must end, with disclosures of information limited to the judicial process. In cases far less sensationalized, courts have imposed such orders to try to safeguard the rights of the accused and the impartiality of the trial process. See, e.g., KPNX Broadcasting Co. v. Arizona Superior Court, 459 U.S. 1302, 1303 (1982) (upholding trial court order in murder case that generated extensive publicity); Sheppard v. Maxwell, 384 U.S. at 361 (reversing state court murder conviction on ground that defendant had been deprived of fair trial due to pretrial publicity; court "might well have proscribed extrajudicial statements . . . which divulged prejudicial matters"); United States v. Brown, 218 F.3d 415, 418 (5th Cir. 2000) (upholding order entered by district court on its own motion prohibiting parties, lawyers and potential witnesses from making "any extrajudicial statement or interview" that "could interfere with a fair trial or prejudice any defendant"), cert. denied, 531

U.S. 1111 (2001); Dow Jones & Co., Inc. v. Simon, 842 F.2d 603, 611 (2d Cir.) (upholding order barring extrajudicial statements by government, its representatives or agents, and defendants where there was reasonable likelihood pretrial publicity would prejudice trial), cert. denied, 488 U.S. 946 (1988); In re Russell, 726 F.2d 1007, 1010 (4th Cir.) (upholding order prohibiting potential witnesses from making extrajudicial statements relating to case), cert. denied, 469 U.S. 837 (1984).

     For these reasons, Mr. Bulger requests the Court on an emergency basis to bar disclosures and further leaks of non-public information by the FBI and other law enforcement agents and agencies in connection with these cases.

                                                JAMES J. BULGER  
                                                By his attorney,

                                                / S /  Peter B. Krupp

Dated:  June 27, 2011                        Peter B. Krupp  
                                                  B.B.O. #548112  
                                                Lurie & Krupp, LLP  
                                                One McKinley Square  
                                                Boston, MA  02109  
                                                Tel:  617-367-1970

## CERTIFICATE OF CONFERENCE

     Pursuant to Local Rule 7.1(A)(2), I, Peter B. Krupp, certify that on June 27, 2011, I conferred with AUSA Brian Kelly about this motion and we were not able to resolve or narrow the issues presented herein.

                                                / S / Peter B. Krupp

                                                Peter B. Krupp

CERTIFICATE OF SERVICE

      I, Peter B. Krupp, hereby certify that this document filed through the ECF system in both of the above-referenced dockets will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 27, 2011.

                                      / S /  Peter B. Krupp

                                      Peter B. Krupp