```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
                                          )
UNITED STATES OF AMERICA                  )
                                          )
        v.                                )    CRIMINAL NO. 94-10287-MLW
                                          )
JAMES J. BULGER                           )
                                          )
                                          )
```

## GOVERNMENT'S SUBMISSION RE:DEFENDANT BULGER'S REQUEST FOR COURT APPOINTED COUNSEL

As ordered by the Court on June 26, 2011, government counsel and defense counsel have conferred regarding whether an agreement can be reached to resolve the dispute concerning defendant Bulger's eligibility for the appointment of counsel. No such agreement has been reached. With respect to the appropriate process to be utilized for deciding defendant Bulger's eligibility for appointment of counsel, the parties also disagree. The government respectfully urges the Court to require affidavits from the defendant's brothers, William and John, before deciding whether the defendant is entitled to taxpayer funded counsel.

Defendant James Bulger has the burden of proving he cannot afford to retain counsel. United States v. Harris, 707 F.2d 653, 660 (2d Cir.), cert. denied, 464 U.S. 997 (1983); United States v. Salemme, 985 F.Supp. 197, 201 (D.Mass.1997). To date, he has not met that burden. As this Court has noted, "[i]n determining whether a defendant is unable to retain counsel, the court may consider whether he has income or assets available to him from other sources." Salemme, 985 F. Supp. at 201, citing United States v. Barcelon, 833 F.2d 894, 897 n.5 (10th Cir. 1987). The

First Circuit has ruled that a district court has "jurisdiction to make inquiries which are necessary and relevant to an evaluation of a party's alleged inability to pay." United States v. Lyons, 898 F.2d 210, 216 (1st Cir. 1990).

On the evening of June 22, 2011, the FBI arrested defendant James Bulger outside his apartment in Santa Monica, CA. During his more than sixteen years as a fugitive in this case, Bulger financed a relatively comfortable lifestyle for himself and his girlfriend, Catherine Greig. Indeed, upon arrest, his rent controlled apartment was found to contain $822,198 in cash - much of it in packages containing $100 bills that were bundled together and hidden inside a wall in the apartment.[1]

While in custody and en route to Boston, defendant Bulger waived his Miranda rights and admitted that he had been a frequent traveler as a fugitive. Bulger acknowledged visiting Las Vegas on numerous occasions to play the slots and claimed he won more than he lost. Bulger also admitted traveling to San Diego and then crossing over into Tijuana to purchase medicines. Moreover, according to FBI Supervisory Special Agent Richard Teahan, Bulger admitted traveling (in disguise) to Boston on several occasions while "armed to the teeth" because he "had to take care of some unfinished business." Bulger refused to elaborate on whom he visited, when exactly he visited, and who was with him on these trips to Boston. While Bulger also

---

[1] Investigators also found two cell phones and other items which are still being analyzed to determine, inter alia, the whereabouts of additional assets.

admitted that he had previously stashed money with people he trusted, he did not identify anyone who might be currently hiding his assets.

The foregoing facts are of course significant because they indicate Bulger may have additional assets and/or allies willing to assist him in his current predicament. In fact, after being arrested, defendant Bulger told the U.S. Pretrial Services office in Los Angeles that defendant's brother, William Bulger, might be willing to assist in posting bail for defendant's long time companion, Catherine Greig.  Of course, if that is true, William Bulger might also be willing to pay for an attorney to represent his brother, James Bulger. Accordingly, the Court should require an affidavit from William Bulger on that issue.

Bulger's long time criminal colleagues - Steven Flemmi and Kevin Weeks - have both told investigators that Bulger has been hiding money for years. In fact, Bulger's other brother - John Bulger - was convicted of perjury and obstruction of justice in 2003 after lying to a federal grand jury about several matters including his role in managing defendant Bulger's financial affairs which involved assisting defendant Bulger in hiding assets in Florida. Specifically, from May 1996 through May 2000, John Bulger used checks from his own personal checking account to make the annual rent payments for a safe deposit box at AmSouth Bank in Clearwater, Florida which had been originally opened in

1992 in defendant James Bulger's name.[2]  A federal search warrant executed in June 2001 revealed an empty safe deposit box.

James Bulger stands accused of an avalanche of serious charges.  Surely the possibility of being prosecuted for perjury if he files a false financial affidavit in this case is of no concern to him - he has every incentive to lie and stick the taxpayers with the bill for his defense.  Accordingly, the Court should not simply rely on Bulger's own claims of indigence but instead should make further inquiry on this matter by requiring sworn affidavits from the defendant's brothers, William and John.

                                          Respectfully submitted,

                                          CARMEN M. ORTIZ
                                          United States Attorney

                             By: /s/ Brian T. Kelly

DATED: June 27, 2011          BRIAN T. KELLY
                                          Chief, Public Corruption Unit
                                          FRED M. WYSHAK, JR.
                                          Senior Litigation Counsel
                                          Assistant U.S. Attorneys

---

[2] The other name on the safe deposit box account was another long time companion of defendant Bulger: Theresa Stanley.  She has advised investigators of the following: she was asked by defendant Bulger to sign her name on this account; she never returned to the bank thereafter; she does not know what was stored in the safe deposit box; she never received any correspondence or paid any fees relating to the safe deposit box; and she never discussed the matter with anyone other than defendant James Bulger.

CERTIFICATE OF SERVICE

Suffolk, ss.                               Boston, Massachusetts
                                           June 27, 2011

    I, Brian T. Kelly, Assistant U.S. Attorney, do hereby certify that I have caused a copy of the foregoing to be served on defense counsel in this case (Peter Krupp, Esq.).

/s/ *Brian T. Kelly*
BRIAN T. KELLY
Chief, Public Corruption Unit
Assistant U.S. Attorney